OSWALD REALTY CO. et al. v. BROUSSARD et al.

(Court of Civil Appeals of Texas. Galveston. April 24, 1913. Rehearing Denied June 5, 1913.)

1. BROKERS (§ 49*)—CONTRACT FOR THE SALE OF LAND — PERFORMANCE OF COMMISSION — EXECUTION OF CONTRACT.

Where a contract for the sale of land procured by plaintiffs as brokers provided that the purchasers should deposit $10,000 as a forfeit on failure to perform, and also that in such event the deposit should be complete satisfaction of all claims for damages by the sellers, the contract was not one which the sellers could enforce against the buyers, and, they having elected not to perform, plaintiffs could not recover commissions on the theory that they had earned their commissions because they had secured a binding and legally enforceable contract.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 70–72; Dec. Dig. § 49.*]

2. BROKERS (§ 60*)—COMMISSIONS—CONTRACT OF SALE—PERFORMANCE.

Where a contract for the sale of land procured by plaintiffs as brokers contained a condition that the buyers should first deposit $10,000 in a bank as earnest money to be forfeited on failure to complete the purchase, and the buyers not having deposited the earnest money, and having refused to do so until the owners had cleared the title, they entered into a written contract with the owners by which each party released the other from liability under the contract, such release without plaintiffs' consent thereto did not adversely affect plaintiffs' rights so as to entitle them to recover.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 91; Dec. Dig. § 60.*]

3. BROKERS (§ 64*)—ACTION FOR COMMISSIONS — PERFORMANCE OF SERVICES — PROCURING PURCHASERS.

Where a contract for the sale of land procured by plaintiffs as brokers required the purchasers to deposit earnest money to be for-

feited in case of their failure to perform, and this they failed and refused to do, they were not willing and ready to purchase the land.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 67, 97; Dec. Dig. § 64.*]

Appeal from District Court, Jefferson County; L. B. Hightower, Judge.

Action by the Oswald Realty Company and others against J. E. Broussard and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

W. G. Reeves and Oliver J. Todd, both of Beaumont, for appellants. Taliaferro & Armstrong, of Bryan, and Barry & Burges, of Beaumont, for appellees.

McMEANS, J. A. Oswald and E. T. Butlin, real estate brokers, doing business under the firm name of Oswald Realty Company, plaintiffs, brought this suit against J. E. Broussard and Ben Hebert, defendants, to recover $32,820 as the alleged agreed compensation to be paid to them by defendants for finding purchasers and making sale of about 12,860 acres of land.

Plaintiffs, in substance, alleged that the defendants listed with them, as real estate brokers, the lands in question for sale with the understanding and agreement that defendants were to have $13 per acre net for the land, and that plaintiffs should have for their services in making sale all above $13 per acre that they could get for it; and the sum sued for is the difference between $13 per acre and the price for which plaintiffs allege they sold the land. They alleged that they secured purchasers in the persons of A. Gregory and E. M. Prindle, who were ready, willing, and able to buy the land, and with whom they, as defendants' agents, entered into a contract for the purchase and sale, but that said contract was not agreeable in all its terms to defendants, whereupon defendants took said purchasers off the hands of plaintiffs as such agents and personally contracted with them, and that said purchasers and defendants personally entered into a binding contract of purchase and sale. The contract is attached as an exhibit to plaintiffs' petition and will hereinafter be more particularly referred to. It was further alleged that said contract was a valid and binding contract of purchase and sale and was capable of specific performance in the courts, and was so agreed and acted upon by the parties thereto, and that the acceptance of said purchasers and entering into said contract with them amounted in law to a sale, wherefore the agreed compensation was earned. It was further alleged that independently of the binding force and effect of the written contract, and independently of whether the same was capable of specific enforcement, by the procurement by plaintiffs of purchasers who were willing, ready, and able to buy and to pay the agreed consideration specified in the contract, plaintiffs had earned the agreed compensation and become entitled thereto. It was further averred that while said contract of sale was in full force a new contract was entered into by and between the defendants and the purchasers, Gregory and Prindle, without plaintiffs' knowledge or consent, by the terms of which the contract of sale was canceled and annulled, and that the failure to consummate the sale was through the wrongful action of defendants in releasing the purchasers, and that defendants were thereby estopped from calling in question either the validity of the contract of purchase or the readiness, willingness, or ability of the purchasers to buy.

Defendants answered, denying that the contract entered into by themselves and Gregory and Prindle was an absolutely binding contract of purchase and sale, and denied that Gregory and Prindle were accepted by them as purchasers by a binding and legally enforceable contract. They alleged: That defendants in December, 1908, or January, 1909, made an agreement with plaintiffs to the effect that if the latter would sell their land within 60 days to allow them as compensation all over $13 per acre that they sold the land for, that some time after said agreement, and on February 1, 1909, defendants were informed by plaintiffs by letter that they had negotiated a sale of the land with Gregory and Prindle, and that they had signed a contract with them, stating terms, etc., of such sale. That on February 3, 1909, Broussard repudiated said contract mainly because Gregory and Prindle had not paid as earnest money 10 per cent. of the purchase price as agreed between plaintiffs and defendants. That on February 26, 1909, the condition as to payment of the 10 per cent. not having been complied with, defendant Broussard wrote to plaintiffs that if the 10 per cent. was not paid in ten days the trade would not be further considered. That on March 13, 1909, Gregory and Prindle came to Beaumont and were introduced to defendant by plaintiffs, who represented them to be reliable and trustworthy and financially able to buy the land and pay therefor. That relying upon such representations, which, they charge, were false and fraudulently made, defendants were induced by plaintiffs to enter into an agreement with Gregory and Prindle to sell them the land, but that it was expressly agreed that the latter should deposit in some bank to be designated by defendants the sum of $10,000 as earnest money or in escrow, which was to be paid by such bank to defendants should said Gregory and Prindle fail or refuse to buy said land after approval of title, which said sum was to be received and accepted by defendants in full satisfaction of all claims for damages against Gregory and Prindle in case they failed or refused to comply with such contract, or to

be applied on the first payment of purchase money if they should comply with their agreement. That said Gregory and Prindle, in the presence and with the knowledge of plaintiffs, represented that they would have said sum of money in the People's Bank of White Hall, Ill., within ten days from the date of said agreement, and it was agreed and understood that said Prindle should draw a draft, to be indorsed by said Gregory, on said People's Bank, payable ten days after date to the First National Bank of Beaumont. In consideration of which agreement and said representations aforesaid, defendants were induced to and did sign a contract in which they agreed to sell said Gregory and Prindle their land, but said contract was conditioned upon the payment of said sum of $10,000 cash into the bank to be held as escrow or as earnest money for the purpose and upon the condition above stated. That in accordance with said contract said draft was drawn by Prindle (and indorsed by Gregory) on the said People's Bank payable to the First National Bank of Beaumont for the sum of $10,000. That the same was duly presented for payment at maturity and payment was refused by said People's Bank. That defendants notified plaintiffs that said check had been dishonored as soon as it was returned, and, as it was represented to defendants that said Prindle would place the money in said People's Bank within a short time, defendants caused said draft to be sent to said People's Bank and there held to await the payment of the money for more than two months. That neither of said parties during all that time ever deposited the money in said bank to pay said draft, and defendants, finally being convinced that said draft never would be paid, ordered it returned, and they again notified plaintiffs of their inability to collect said draft, and they had full knowledge of the fact that said Gregory and Prindle and that defendants would make no further effort to consummate said sale. That said $10,000 was to be paid as aforesaid within ten days after the execution of said contract, and time was of the essence of the contract, and when said Gregory and Prindle failed to pay said sum within the time stipulated defendants were no longer bound by said contract and had a right then and there to cancel same, or at any time thereafter. That the payment of said sum of money was a condition precedent which had to be performed by said Gregory and Prindle before they had any right under said contract, and defendants had a right to demand the payment of said sum in accordance with the terms of said contract, and said Gregory and Prindle had no right that they could assert or maintain under said contract until said $10,000 was paid as agreed upon. That their failure so to pay said sum was a breach of said contract; wherefore, defendants say that said contract was not a sale nor an enforceable contract of sale, but merely an executory contract to sell, based upon a condition precedent which was never performed, and that, as plaintiffs' right to compensation depended entirely upon the performance of their part of the contract by Gregory and Prindle, they are not entitled to recover in this suit.

The pleadings of the parties are of great length, and the substance of only so much of the same is here stated as is necessary to an understanding of the points upon which we base this decision. The case was tried by the court without the assistance of a jury and resulted in a judgment for defendants. Plaintiffs have appealed.

The evidence in the record justifies the following fact findings: Plaintiffs were real estate brokers, doing business in Beaumont. Defendants, who resided in Beaumont, owned something over 12,000 acres of land in Jefferson county and desired to sell. In December, 1908, or January, 1909, defendants listed their land with plaintiffs for sale, agreeing to take $13 per acre for the same, and further agreeing that plaintiffs could have as their compensation for effecting a sale all they might get for the land over and above $13 per acre. Plaintiffs diligently sought to find a purchaser, and in a short time interested A. B. Gregory of Missouri and E. M. Prindle of Illinois in the land, and finally made a proposition to sell them the land for $200,000, and this offer was accepted. A contract in writing was entered into by and between plaintiffs and Gregory and Prindle, but the same was not introduced in evidence, nor are the terms stated further than that to bind the contract Gregory and Prindle delivered to plaintiffs their check for $500. On February 1, 1909, plaintiffs by letter informed defendants of the execution of the contract and further said: "On depositing their check and with the understanding with you while in our office, we have given them 60 days from the 24th day of January to make their arrangements and close the trade. We are expecting Mr. Gregory here again next week when we will take up the matter with you of furnishing abstracts, which we understand you have practically up to date. We have no doubt about the trade going through, as the purchasers practically had their arrangements made for the money before they came down, and if their present plans do not fail we will be able to close with them in the next 20 or 30 days on a cash basis." In reply defendant Broussard on February 3, 1909, wrote plaintiffs, saying: "* * * In order to make the matter regular, it will be necessary for the contract of sale to be signed by myself and the earnest money put up in escrow in a bank, with the understanding that these people will take the land and pay for the same according to the stipulated terms before the expiration of 60 days from the 24th of January. I simply

write this to you that we may get the matter shaped up in good form, and I do not consider that any deal has been closed until they have put up the earnest money, and until I have signed the contract of sale. I wish also to notify you that, in the event the trade is not closed up by depositing the earnest money by the time your contract with me for the sale of the land expires, I will not renew the same at the price I am now asking for the land." On February 26, 1909, defendant Broussard, who throughout the entire negotiations was acting for his codefendant Hebert, as well as for himself, again wrote plaintiffs, and after referring to his letter of February 3d said: " * * * Beg to say I do not consider that any sale has been made as they did not put up 10 per cent. of the purchase price, as earnest money, in accordance with my request; and as your contract expired on the 24th inst., I wish to notify you that unless they come in within the next ten days and put up this ten per cent. of the purchase price you need not consider the trade any further, as I do not care to tie up my lands any longer. I give this notice and margin of ten days in order to give them ample time to put up the ten per cent. of the purchase money preparatory to examination of title to the property, and if they do not put up this earnest money within the specified ten days from date hereof, you will please consider all negotiations for the land off, and suggest you wire them to that effect."

After the date of this letter Gregory and Prindle went to Beaumont and were introduced by plaintiffs to defendants, and negotiations for the purchase of the land were resumed, resulting in a contract between Gregory and Prindle on the one part and defendants on the other, made on March 12, 1909. This contract is quite lengthy and will not be set out in full, but we will state so much of the terms thereof as we think essential upon the questions here involved. The first section is merely descriptive of the various tracts of land, the subject of the contract, which aggregated 12,860 acres.

The second section contains the stipulation that defendants agreed and bound themselves to sell and Gregory and Prindle to buy said lands at the price of $200,000 for cash, if the purchasers should so elect, or one-fourth in cash and the remaining three-fourths in eight equal yearly payments, providing for the giving of notes therefor, the reservation of the vendor's lien, etc.

The third section is as follows: "It is mutually agreed and specified that the parties of the second part have this day deposited in the bank a draft payable to said bank in the sum of ten thousand dollars ($10,000.00) ten days after date, which sum of ten thousand dollars is to be held in escrow by said bank, and in event the parties of the second part comply with the terms of this contract, and pay or cause to be paid either the full pur-

chase price of said land, or one-fourth thereof, with notes for balance as herein provided for, or for such proportion thereof as represents the amount of good titles as hereinafter provided, if all of said titles are not perfected at said time, then the said ten thousand dollars is to be applied as a part of said purchase price; but if said parties of the second part should fail or refuse to comply with their part of this contract, then the said ten thousand dollars shall be paid to the said parties of the first part as a forfeit from said parties of the second part, resulting from their failure to faithfully comply with the terms and conditions of this contract."

The fourth section provides for the delivery by defendants of abstracts of title, and the fifth provides the time in which examination thereof shall be made, with the stipulation that defendants shall cure all defects pointed out before the purchasers shall be required to accept the title, and concluding with the stipulation that: "Upon curing of said titles parties of the second part shall accept and pay for same upon notice to them that said titles have been perfected."

The provisions of the sixth, seventh, and eighth sections are not thought to have any material bearing upon the questions hereinafter discussed.

The ninth and tenth sections are as follows:

"Ninth. It is further agreed and understood that in default on the part of the parties of the second part in the terms of this contract, or any of said terms, that the ten thousand dollars deposited as above provided for shall be full and complete satisfaction of any and all claims for damages which the parties of the first part might have against the parties of the second part by reason of any such default.

"Tenth. It is further agreed and understood that this contract is in lieu of and is a substitute for contract entered into by parties of the second part on the 23d day of January, 1909, with A. Oswald and E. T. Butlin acting as agents for the parties of the first part, and is in lieu of and is substituted for any and all other contracts and agreements, whether verbal or written, which are executed by or made by the said parties of the first part, or said A. Oswald or E. T. Butlin, their agents."

The eleventh and twelfth sections relate to the payment for, and delivery of, the property of the purchasers.

Simultaneously with the execution of the contract above referred to, the plaintiffs and defendants entered into a contract in writing in which all former agreements between them were merged, wherein, after referring to the negotiations then pending for the sale of the land to Gregory and Prindle, it was provided that in the event Gregory and

Prindle should take the land the defendants were to receive $13 per acre net for the same, and the plaintiffs should receive the remaining portion of the purchase price. The other stipulations in this contract have no material bearing upon the questions here involved.

Immediately after the execution of the contract between Gregory and Prindle and defendants, Prindle drew his draft on the People's Bank of White Hall, Ill., in favor of the First National Bank of Beaumont, which last-named bank was agreed upon by the parties as stakeholder, and deposited same with said First National Bank. This draft was indorsed by Gregory and was made and deposited in pursuance of the agreement between the parties as shown by the third section of their contract, which has hereinbefore been copied. The First National Bank at once forwarded the draft for collection, but payment was refused by the People's Bank, the drawee, and the draft was returned. It was afterwards again sent for collection and payment again refused, and the draft was never paid but remained several months in the custody of the First National Bank.

Very soon after the execution of the contract between defendants and Gregory and Prindle and the deposit of the draft in the bank, defendants delivered to the attorney of Gregory and Prindle abstracts of title to nearly all of the tracts of land for examination. Defendant Broussard testified in this connection that, at the time of the execution of said contract, he gave Gregory and Prindle's attorney part of the abstracts; that he did not have all the abstracts completed to date, but that some of them would be completed in a few days; that he did deliver other abstracts as they were completed by the abstractor; that when he learned, after the expiration of ten days, that the draft had not been paid he immediately notified the plaintiffs, Oswald and Butlin, to this effect, and Butlin said he would telegraph them and try to get them to hurry up and pay; that the draft was forwarded a second time at plaintiffs' request, but was not paid, and when he learned it was not he told plaintiffs he could not go any further with the transaction if Gregory and Prindle were not going to pay the $10,000 to be put in the bank as a forfeit; that he also spoke to Gregory and Prindle's attorney about it and told the attorney he would go no further with curing the defects in the title pointed out by the attorney unless his clients put up the money; that after he found out that the earnest money would not be put up he procured from Gregory and Prindle a cancellation of the contract of purchase. The cancellation is in the form of a contract, dated June 18, 1909, and after referring to the contract theretofore executed by them on March 13, 1909, and after reciting that "since that date, for good and suffi-cient reasons, the parties of the first part and the said parties of the second part have mutually agreed to absolutely cancel the said agreement to the end that (each) be forever hereafter absolved and relieved from said agreement," proceeds to cancel the contract and to provide for the return to Gregory and Prindle of the draft theretofore deposited by them in the First National Bank. Broussard testified that he procured this cancellation contract after he found that Gregory and Prindle were not going to put up the money to bind the trade. However, in a letter to plaintiffs, dated July 8, 1909, in answer to one from them inquiring how negotiations for the land were progressing, Broussard wrote that after Gregory and Prindle "refused to accept the land on the ground that the title was not satisfactory I investigated their financial standing and consulted attorneys to see whether or not there would be any chance of making them pay the draft which was put up as a forfeit, and came to the conclusion that I could not hold them to the deal on account of defective title to some of the property, and I therefore released them from the trade and returned the draft, so the trade is off so far as I am concerned." On July 26, 1909, Broussard again wrote to plaintiffs, saying: "Beg to say you are mistaken when you say I called the sale off with Gregory and Prindle. The facts of the matter are that I was as lenient as any seller could possibly be, as you well know, and accepted a draft on a bank as forfeit, which was never paid. I still gave those people some 30 or 60 days in which to take the land, but they positively refused to do so, claiming that the titles were not satisfactory, and inasmuch as their attorney found several defects or clouds on the title which would in all give these people a loophole to get out of the trade, as suit would have to be instituted at their home, I did not feel justified in bringing suit to try to collect the forfeit. Therefore I feel that I have done only as any other business man would have done when I agreed to let them out of the trade," etc.

Gregory and Prindle testified that at the time the draft was drawn on the People's Bank of White Hall they had no funds in said bank, nor did they thereafter deposit any money in that bank to meet it. Prindle testified in this connection that: "When I drew that draft I expected to pay it whenever the title to this land, or at least a sufficient part of it, was made perfect. I did expect Broussard and Hebert to perfect the title before I paid this draft or any money whatever. If they would have perfected the title, or at least to a proper part of it, I could have raised the money to pay this draft. I did not pay it for the reason above stated, because the title to the land had not been perfected." Gregory testified in the same connection: "I expected Broussard and Hebert to go to the expense of curing the numerous

technical and other objections raised by me and my attorney to their title, before I paid, in compliance with the contract, to the First National Bank of Beaumont, the sum of $10,000." It would thus seem that Broussard and Hebert refused to proceed further in the matter of the curing of defects in their title pointed out by Gregory and Prindle's lawyer because Gregory and Prindle failed to put in the bank the $10,000 as earnest money after ten days from the date of the contract, and that Gregory and Prindle refused to pay the draft or otherwise cause said sum to be put in the bank at the time agreed upon because the defects suggested by their attorney had not been cured. The contract does not place any limit upon the time in which the appellees should cure the defects in their titles pointed out by Gregory and Prindle's attorney.

There was much testimony pro and con on the question of whether Gregory and Prindle was able to buy and pay for the land upon the terms agreed upon and was probably sufficient to sustain a judgment based on a finding either way, but in the view we take of the legal principles that must control under the facts stated it is immaterial whether they were able or not.

[1] We will not discuss appellants' assignments of error in detail. Their principal contention is that they were entitled to a recovery because they secured the execution of a binding and legally enforceable contract, amounting in law to a sale, and thereby earned the compensation for which they sued. We cannot agree to this contention. While the contract contained the expression that Broussard and Hebert agreed and bound themselves to sell and Gregory and Prindle agreed to purchase, it is manifest by the intention expressed throughout the contract that Gregory and Prindle reserved the right not to take the land, even if the title was found to be good, but instead could refuse to take it and let the $10,000 which they agreed to deposit in the Beaumont Bank, but which they never deposited, go to appellees as a forfeit or liquidated damages. Had the money been deposited as agreed, Broussard and Hebert could not under that contract have enforced specific performance, because they had agreed that, in the event Gregory and Prindle should not comply with any of the terms of the contract, then the sum they agreed to deposit should be full and complete satisfaction of any and all claims for damages which Broussard and Hebert might have against them by reason of any such default. We think this provision bound Broussard and Hebert to accept the money so agreed to be deposited in full satisfaction of all claims, demands, and causes of action arising out of Gregory and Prindle's default in complying with the terms of the contract, and that this defense could have been successfully interposed by them in a suit by the owners to compel them to take and pay for the land. This being true, the contract of sale was not enforceable as against Gregory and Prindle. Moss & Raley v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847; Simpson v. Eardley, 137 S. W. 379; Rankin v. Grist, 129 S. W. 1148; Webb v. Durrett, 136 S. W. 1190; Roberts v. Clark, 103 S. W. 417; Hamburger v. Thomas, 103 Tex. 280, 126 S. W. 561.

[2] Appellants contend further that, if the contract did not amount in law to a sale in itself, the appellees defeated the consummation of the sale by negotiating the release contract. We do not think that under the facts stated the mere execution by the parties of a contract relieving each other from the obligations of the contract of sale put them on a different footing from that they occupied before. The condition precedent to the validity and binding force of the contract upon the owners of the land was the payment of $10,000 into the bank as earnest money to be forfeited to the owners upon the failure of the purchasers to comply with all the terms of the purchase. Not having deposited this sum as they, under the contract, were required to do, the owners had the right to declare and treat the contract at an end. This did not require any formal declaration in writing, neither was the assent thereto of the purchasers necessary; and the mere fact that they did assent in writing, and that the assent was given on the request of the owners, did not give to appellants a right of recovery unless such right existed independently of the execution of the formal release. Appellants contend further that under the evidence the sale failed of consummation on account of appellees' defective title, and that therefore they were entitled to recover under the principles laid down in Hamburger & Dreyling v. Thomas, 103 Tex. 280, 126 S. W. 561.

There was testimony from which a finding could have been made that the trade failed because of defective titles. But there was also testimony which would sustain a finding that the sole cause of the consummation was due to the failure of Gregory and Prindle to comply with the contract requiring them to deposit the earnest money. The court did not find its findings of fact, and in the absence of such findings we must assume, in support of the judgment, that the court found every essential fact in favor of the winning party that the evidence justified. Hence we find and conclude that the sale was not consummated, not because of defective titles, but because of the failure of Gregory and Prindle to deposit the earnest money as they agreed to do. This being true, the doctrine stated in the Hamburger Case cannot be successfully invoked. Again, it is clearly evident that to entitle appellants to compensation for their services there must have been a sale, not necessarily a consum-

mated sale, but a binding contract that would amount in law to a sale. Had the purchasers put up the earnest money, which under the contract the owners of the land must have received in full acquittance and discharge of all of the purchasers' obligations in case they failed to complete the purchase, this would have been only an option (Moss v. Wren, and Hamburger v. Thomas, supra), and having failed to deposit the earnest money, which was necessary to make the contract binding as an option, the written agreement was not only not a binding contract of sale but not even binding as an option.

[3] Lastly appellants contend that independently of all other considerations they produced purchasers who were willing, ready, and able to buy the land, and thereby earned the agreed compensation. It may be conceded, for the purpose of disposing of this contention, that the appellants were able. But were they willing and ready? If so, it seems to us that they would have deposited the earnest money in conformity with their agreement. This they did not do, and from this fact alone the court below was justified in concluding that they were neither willing nor ready. If, then, the purchasers were able, but not willing or ready, to comply with the contract of purchase, the appellants signally failed to prove facts that would entitle them to recover under the contention stated. Clark v. Asbury, 134 S. W. 286; Moss & Raley v. Wren, 102 Tex. 569, 113 S. W. 739, 120 S. W. 847.

We find no reversible error in the record and the judgment of the court below is affirmed.

Affirmed.